Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: 818-619-3774
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN JUNG, individually, and on all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>DISCOVER BANK,<br><br>Defendant. | Case No. 3:26-cv-06638-CRB<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR RESTITUTION AND INJUNCTIVE RELIEF BASED ON VIOLATIONS OF:**<br><br>**(1) Unfair Competition Law (Cal. Business & Professions Code §§ 17200 et seq.).**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs JONATHAN JUNG ("Plaintiff") on behalf of himself and all others similarly situated, allege the following against Defendant Discover Bank ("Defendant") upon information and belief based upon personal knowledge:

## INTRODUCTION

1. Plaintiff's Class Action Complaint is brought pursuant to the Unfair Competition Law, arising from Defendant's failure to reimburse Plaintiff and similarly situated

consumers for unauthorized electronic fund transfers from their deposit accounts. Plaintiff alleges that such conduct constitutes and unfair and unlawful business practices under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL").

2. Plaintiff, individually and on behalf of all others similarly situated, brings this Complaint for restitution, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Defendant in routinely holding consumers liable for unauthorized electronic fund transfers made out of their deposit accounts. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

3. Plaintiff Jonathan Jung is a natural person residing in Millbrae, San Mateo County, California, and is a "consumer" as defined by 15 U.S.C. § 1693a(6).

4. At all relevant times herein, Plaintiff held a joint online savings account with Defendant Discover Bank.

5. Defendant Discover Bank ("Defendant" or "Discover") is a Delaware-chartered bank and financial institution operating and offering deposit account services throughout the United States, including within the state of California and this District.

6. The above-named Defendant, and its subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the

acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL ALLEGATIONS

8. Plaintiff maintained a joint online savings account with Defendant Discover Bank, shared with his wife, Karen Chiu.

9. Between October 2023 and December 2024, Plaintiff's account was breached on multiple occasions. More than $100,000 was stolen through unauthorized ACH withdrawals during this period.

10. Discover refunded these unauthorized transactions only after Plaintiff initiated disputes. However, Defendant failed to detect or prevent the fraud on its own and did not implement adequate protections despite the repeated breaches.

11. Plaintiff and Ms. Chiu were forced to close and reopen their Discover account five times, and implemented additional security measures including verbal passwords, freezing the account when not in use, and frequently updating login credentials.

12. On December 5, 2024, Ms. Chiu received a phone call that appeared to come from Discover's official phone number (1-800-347-7000). The caller identified herself as a Discover Bank fraud team member and referenced legitimate account activity, making the call appear authentic.

13. The caller instructed Ms. Chiu to verify her identity using Socure, a third-party vendor that Discover Bank actually uses for ID verification. She complied and uploaded her identification through the Socure platform after receiving authentication codes via text from Discover.

14. Immediately afterward, Plaintiff received an email confirming that a wire transfer of $110,000 had been initiated from his account ending in 2057, along with a $30 service fee. This was the first wire transfer ever initiated from Plaintiff's account.

15. Plaintiff immediately contacted Discover Bank to dispute the wire transfer and report the fraud. Discover closed the account, opened a replacement account, and initiated a fraud investigation and wire recall request.

16. Over the following months, Discover provided Plaintiff with conflicting and inaccurate updates. Representatives claimed the funds were sent to a Malaysian bank (Malayan Banking Berhad), then later said they went to Bank of America.

17. Discover later confirmed the wire had been sent to a Bank of America account ending in 4409. However, the bank ultimately closed the recall and refused to reimburse Plaintiff, stating the transaction had passed their internal security measures.

18. Plaintiff also filed complaints with the Consumer Financial Protection Bureau (CFPB), the Federal Reserve, the Office of the Comptroller of the Currency (OCC), the Internet Crime Complaint Center (IC3), and the local police department. Discover again denied liability, stating that biometric and authentication protocols had been completed—even though those credentials had been obtained through fraud.

19. Discover repeatedly told Plaintiff that it had submitted a hold harmless letter to Bank of America, which was allegedly required by the recipient bank to return the funds. However, Plaintiff later learned that Discover never submitted the letter due to a wording mismatch between its form and Bank of America's. This breakdown in communication may have caused a critical delay that affected the success of the recovery.

20. At no time during its investigation did Discover provisionally credit Plaintiff's account for the $110,000 fraudulently withdrawn from his account.

21. As of the date of this filing, Discover has refused to refund Plaintiff the $110,000 that was fraudulently withdrawn from his account. Plaintiff, thus, alleges that Discover failed to conduct a good faith investigation of the fraudulent wire transfers. Moreover, Plaintiff alleges that Discover did not have a reasonable basis for believing that the $110,000 wire transfers were not authorized by him or Ms. Chiu.

22. Discover Bank advertises its online banking platform as secure, user-controlled, and suitable for initiating wire transfers without branch visits. The bank encourages consumers to authorize wire transactions digitally, using credentials and multi-factor authentication methods issued to the consumer. At no point are bank employees required to initiate the payment order on the customer's behalf; the consumer's actions alone trigger the debit from

their deposit account.

23. In Plaintiff's case, Discover processed the $110,000 wire transfer automatically based on electronic instructions submitted through its consumer interface. No physical signature or paper instruction was provided. Instead, Discover relied solely on credentialed access and identity verification protocols—protocols that had been compromised by fraud. The entire transfer process was digital, consumer-facing, and electronically authenticated.

## CLASS ALLEGATIONS

24. Plaintiff brings this action on behalf of himself and all others similarly situated, as members of the proposed class (hereafter "The Class"), defined as follows:

> All persons in the United States who had funds transferred from a deposit account held with Defendant that they did not authorize, and who notified Defendant of such unauthorized transfer within sixty (60) days but were not reimbursed by Defendant, within four years prior to the filing of this Complaint.

25. Plaintiff represents, and are members of, The Class, consisting of all persons in the United States who had funds electronically transferred from a deposit account held with Defendant who did not authorize such transfer, and who notified Defendant of such unauthorized transfer within sixty days but were not reimbursed by Defendant within the one year prior to the filing of this Complaint.

26. Defendant, its employees and agents are excluded from The Class. Plaintiff does not know the number of members in The Class, but believes the Class members number in the hundreds, if not more. Thus, this matter should be certified as Class Action to assist in the expeditious litigation of the matter.

27. The Class is so numerous that the individual joinder of all of its members is impractical. While the exact number and identities of The Class members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believe and thereon alleges that The Class includes hundreds, if not thousands, of members. Plaintiff alleges that The Class members may be ascertained by the records maintained by Defendants.

28. This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of the Class members is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the Court.

29. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members and include, but are not necessarily limited to, the following:

a) Whether Class Members authorized transfers from their deposit accounts held with Defendant;

b) Whether Class Members notified Defendant of unauthorized transfers from their deposit accounts held with Defendant;

c) Whether Defendant reimbursed Class Members for those unauthorized transfers;

d) Whether Defendant conducted a good faith investigation of Plaintiff and Class Members' disputes of unauthorized transfers; and

e) Whether such conduct constitutes a violation of the UCL.

30. As a person who had funds transferred from a deposit account held with Defendant who did not authorize such transfer, and who notified Defendant of such unauthorized transfer within sixty days but was not reimbursed by Defendant within the one year prior to the filing of this Complaint, Plaintiff is asserting claims that are typical of The Class.

31. Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

32. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation

of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

33. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

**COUNT I: VIOLATION OF VIOLATION OF THE UNFAIR COMPETITION LAW**

**(On Behalf of Plaintiff, the Class, and the general public)**

34. Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

35. Actions for relief under the UCL may be based on any business act or practice that is unlawful, unfair, or fraudulent. A plaintiff must show a causal connection between a defendant's business practices and the alleged harm. The "act or practice" aspect of the statutory definition covers single acts and ongoing misconduct.

**UNFAIR**

36. California Business & Professions Code § 17200 prohibits any "unfair... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff

reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

37. In order to satisfy the “unfair” prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

38. Here, Defendant’s conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant’s decision to refuse to provide them refunds for the unauthorized transfers described herein. Thus, Defendant’s conduct has caused substantial injury to Plaintiff and the members of the Class.

39. Moreover, Defendant’s conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such conduct by Defendant caused Plaintiff and members of the Class to lose substantial sums of money that they are not liable for. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers.

40. Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided. Defendant refused to provide refunds after having been notified of the unauthorized transfers at issue. As such, Defendant took advantage of Defendant’s position of perceived power in order to deceive Plaintiff and the Class members. Therefore, the injury suffered by Plaintiff and members of the Class is not an injury which these consumers could reasonably have avoided.

41. Thus, Defendant’s conduct has violated the “unfair” prong of California Business & Professions Code § 17200.

42. In the alternative, and independent of the foregoing, Defendant's conduct as alleged herein also constitutes an "unfair" business act or practice under the balancing test applied by the Ninth Circuit to UCL claims brought by consumers. See *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) (endorsing application of the balancing test to consumer UCL claims in the absence of controlling authority from the California

Supreme Court). Under the balancing test, a business practice is "unfair" if it offends an established public policy, or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and the utility of the practice is outweighed by the gravity of the harm it causes to the alleged victim.

43. Here, Defendant's practice of refusing to refund victims of wire transfer fraud, despite lacking a reasonable basis to believe the transfers were authorized, offends the public policy embodied in California's consumer protection and banking statutes and is immoral, unethical, oppressive, and unscrupulous. Defendant's conduct allowed it to retain funds that rightfully belong to Plaintiff and members of the Class while shifting the entire risk and loss of third-party fraud onto its own customers. Defendant derives no legitimate business utility from refusing to reimburse victims of unauthorized transfers that outweighs, or even approaches, the substantial financial harm inflicted on Plaintiff and the Class. Accordingly, the gravity of the harm to Plaintiff and the Class far outweighs any conceivable utility to Defendant, and Defendant's conduct is "unfair" under the balancing test.

44. Further, and also in the alternative, Defendant's conduct constitutes an "unfair" business act or practice under the tethering test likewise recognized by the Ninth Circuit as an available standard for evaluating UCL unfairness claims brought by consumers. See *Lozano*, 504 F.3d at 735-36. Under the tethering test, a practice is "unfair" if the public policy it violates is tethered to specific constitutional, statutory, or regulatory provisions.

45. Here, Defendant's conduct is tethered to the public policies underlying the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. § 1005.1 et seq., which reflect a legislatively and administratively declared policy of protecting consumers from liability for unauthorized electronic fund transfers and requiring financial institutions to conduct good faith investigations of such transfers, as well as the public policy embodied in the California Commercial Code governing the rights and obligations of banks and

their customers with respect to unauthorized funds transfers. Defendant's practice of denying reimbursement without a reasonable basis for believing the transfers were authorized, and without conducting an adequate investigation, violates the policy and spirit of these provisions. Accordingly, Defendant's conduct is also "unfair" under the tethering test.

46. Plaintiff pleads the foregoing unfairness standards, including the injury-based test set forth above, the balancing test, and the tethering test, in the alternative, as the Ninth Circuit has recognized that the appropriate standard for evaluating "unfairness" under the UCL in consumer actions remains unsettled among California courts.

**UNLAWFUL**

47. California Business and Professions Code Section 17200, et seq. prohibits “any unlawful…business act or practice.”

48. As described above, Plaintiff alleges that Defendant’s conduct constitutes violations of the California Commercial Code.

49. Defendant’s acts, as pled herein, are therefore “unlawful” business practices or acts under Business and Professions Code Section 17200 *et seq*. for violating the California Commercial Code.

50. Defendant’s conduct caused and continues to cause economic harm to Plaintiff and Members of the Class.

**PUBLIC INJUNCTIVE RELIEF**

51. Plaintiff hereby seeks public injunctive relief on behalf of the general public to stop Defendant’s ongoing practice of refusing to refund or otherwise reimburse victims of wire transfer fraud, as described herein.

52. Such public injunctive relief would benefit the general public because it would stop Defendant’s ongoing practices, as described herein, and therefore would prevent other individuals who have not yet been harmed by Defendant’s practices from suffering a similar harm that was suffered by Plaintiff.

53. Plaintiff is seeking a forward-looking injunction on behalf of the general public.

54. Plaintiff's claim for public injunctive relief is not intended to correct a past wrong by Defendant, but instead to prevent future violations of the California Commercial Code, and UCL. Certainly, an order requiring Defendant to cease its practice of refusing to refund or reimburse victims of wire transfer fraud would necessarily benefit individuals who are not yet class members by protecting them from the same wrongs already suffered by Plaintiff and the putative Class.

55. Moreover, such public injunctive relief would benefit the general public because it would strengthen public trust in the American banking system.

56. Defendant's alleged failure to follow adequate security procedures, maintain consumer funds, and refund consumers who are the victims of wire transfer fraud not only presents the potential for future harm to consumers but also erodes public trust in the banking system and the economy as a whole.

57. Public injunctive relief would address all of these concerns and would undoubtedly benefit the public at large.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JONATHAN JUNG, individually and on behalf of all similarly situated, respectfully requests that judgment be entered against Defendant DISCOVER BANK and award relief as follows:

a) That this action be certified as a class action, that Plaintiff be appointed as Class Representative, and that Plaintiff's counsel be appointed as Class Counsel;

b) Restitution and/or disgorgement of all funds wrongfully retained by Defendant in violation of the California Unfair Competition Law;

c) Public injunctive relief and restitution pursuant to California Business and Professions Code § 17203;

d) For prejudgment interest at the legal rate;

e) Such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

58. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues so triable.

Respectfully submitted this 5th day of August, 2026.

By: /s/Todd M. Friedman
Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff

Filed electronically this 5th Day of August, 2026, with:

United States District Court CM/ECF system.

Notification sent electronically on this 5th Day of August, 2026, to:

Honorable Judge Charles R. Breyer
United States District Court
Northern District of California
And all Counsel of Record as recorded on the Electronic Service List

/s/ Todd M. Friedman, Esq.
Todd M. Friedman, Esq.